IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DENNIS McGOUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CASE NO. 1:07-0039 |
| v. ) | JUDGE CAMPBELL |
| ) | |
| ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION

## I. Introduction and Background

This matter is before the Court upon a Motion to Dismiss filed by Defendant Jasper Bernard Brewster, D.D.S..[1] Docket Entry No. 61-1. In support of his Motion, Defendant Brewster has filed an accompanying Memorandum of Law. Docket Entry No. 61-2.

---

[1] Defendants Correction Corporation of America, Lindamood, Casteel, Staggs, Parrish, Pool, Kilzer, Hefner, Edwards, Gobbell, Brooks, Marable, Henry, and Brewster are not parties to the instant Motion to Dismiss. Defendants Correction Corporation of America, Lindamood, Casteel, Staggs, Parrish, Pool, Kilzer, Hefner, Edwards, Gobbell, and Brooks have filed their own Motion to Dismiss (Docket Entry No. 41) and supporting Memorandum of Law (Docket Entry No. 42), which the Court will address in a separate Memorandum Opinion. Defendant Jordan has also filed her own Motion to Dismiss (Docket Entry No. 49) and accompanying Memorandum (Docket Entry No. 50-1), which the Court will address in a separate Memorandum Opinion. Defendant Marable has filed a Motion for Summary Judgment (Docket Entry No. 51), supporting Memorandum of Law (Docket Entry No. 52), Statement of Undisputed Material Facts (Docket Entry No. 53), and Affidavit (Docket Entry No. 54), which the Court will likewise address in a separate Memorandum Opinon. Defendant Henry is not a party to any pending dispositive Motion, however the Court will address the claims against him in a separate Memorandum Opinion.

1

On October 1, 2007, Plaintiff filed an "Answer," requesting that the Court allow his claims to proceed.[2] Docket Entry No. 62.

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983, essentially alleging violations of his First, Eighth, and Fourteenth Amendment rights. Docket Entry No. 1. Plaintiff sues CCA, Cherry Lindamood, Debra Casteel, Larry Staggs, Michael Parrish, Stephanie Pool, Leigh Kilzer, Sonya Hefner, Lisa Edwards, Alisha Gobbell, Burton Brooks, Charles Marabel, "DMD" Henry, Jasper Brewster, and Carolyn Jordan in their individual capacities. *Id.* Plaintiff alleges, *inter alia*, that Defendants denied him proper medical care for an injury he sustained while working on "work crew," and that Defendants threatened him with retaliation if he "continued to file grievances." *Id.* Plaintiff seeks compensatory and punitive damages.[3] Docket Entry No. 1.

Defendant Brewster argues that Plaintiff's "Complaint fails to allege that Jasper Bernard Brewster, D.D.S. was personally involved in any action or failure to act which could reasonably be construed to have interfered in any right of the Plaintiff under federal or state law, or guaranteed by the U.S. Constitution." Docket Entry No. 61-1. Specifically, Defendant Brewster argues that Plaintiff's Complaint pertains to "a series of events taking place between July 25, 2006 and January 3, 2007," which was prior to the time that he was seen by Defendant Brewster (March, 2007). Docket Entry No. 61-2. Plaintiff's Complaint avers that he requested to see the

---

[2]Plaintiff's Response to the instant Motion to Dismiss was due August 29, 2007. Plaintiff did not file his "Answer" until October 1, 2007. Plaintiff's "Answer," therefore, is untimely. Additionally, Plaintiff's "Answer" does not specify to which of the pending Motions it is in response. Because Plaintiff is proceeding pro se, however, the Court will consider his "Answer," and will consider it as a Response to the each of the pending Motions.

[3]Plaintiff also seeks an award of attorney fees. Plaintiff, however, is proceeding pro se.

2

dentist on or about September 1, 2006, and that he was treated by an unnamed dentist (who was not Defendant Brewster) on or about September 12, 2006. Docket Entry No. 1; Docket Entry No. 61-2.

For the reasons set forth below, Defendant Brewster's Motion to Dismiss is granted.

## II. Facts[4]

At all times relevant to the case at bar, Plaintiff was an inmate in the custody of the Tennessee Department of Correction, housed at South Central Correctional Facility in Clifton, Tennessee, which is operated by Corrections Corporation of America, a private corporation that contracts with the State to operate the penal facility.

On July 25, 2006, Plaintiff slipped and injured his back while carrying a steel track during work crew. Plaintiff reported to Defendant Staggs that he was injured and was going to "sign up for medical." Defendant Staggs "threatened" Plaintiff. Plaintiff reported the incident to Defendant Casteel, who advised Plaintiff to "sign up for sick call," which Plaintiff did.

The following day, on July 26, Plaintiff went to sick call, where the nurse told him that she would try to get him to the clinic to see the doctor. The nurse instructed Plaintiff to "go to the pill window" that evening, where he received three Robaxin and was again informed that the nurse would try to get him seen by a doctor at the clinic. Plaintiff again signed up for sick call.

The next day, on July 27, Plaintiff went to sick call requesting to see a doctor and reporting that his back was "hurting bad." The nurse advised Plaintiff that she would try to get him seen at the clinic and to "give the Robaxin 14 days" to work. Later that morning, Plaintiff

---

[4]Unless otherwise noted, the following facts are derived from Plaintiff's Complaint and are taken as true.

3

reported his injury to Sergeant Maples, who advised Plaintiff to sign up for sick call, which Plaintiff did.

Also on July 27, Plaintiff filed a grievance against Defendant Staggs regarding Plaintiff's injury and Defendant Staggs' threatening of Plaintiff. Plaintiff requested a "job drop" or "to be put in education." Plaintiff additionally wrote a letter to Defendant Lindamood, explaining the situation to her.

Plaintiff returned to sick call on July 28, reporting that the medication was not working and that he remained in pain. The nurse again informed Plaintiff that she would try to get him into clinic to see a doctor. Plaintiff reported "what all was going on" to Sergeant Lane, who said that she would speak to Defendant Casteel and see if they could get Plaintiff seen by a doctor. Plaintiff also reported "the problem" to Defendant Parrish, who informed him that the doctor "was not in today," but that he could take Plaintiff to the clinic, but Plaintiff would be charged $5.00. Plaintiff refused to go to the clinic "because I would have only seen a nurse" and he had "been seeing them" to no avail. As of July 28, Plaintiff had not seen a medical doctor for this injury. No one made any effort to assist Plaintiff with his back injury over the weekend of July 29-30. Plaintiff again signed up for sick call on Sunday evening, July 30.

Plaintiff returned to sick call on July 31 and was instructed to continue taking his medication. The nurse again iterated that she would try to get Plaintiff to the clinic to be seen by a doctor. Plaintiff filed a grievance against "the medical department for inadequate medical attention and asked to see a doctor." Plaintiff again signed up for sick call.

Plaintiff returned to sick call on August 1, reporting that he was in pain and that the medication was not working. Plaintiff was taken to the clinic to see the doctor at approximately

4

2:00 pm. Plaintiff took copies of a previous CT scan demonstrating an earlier injury and showed the CT scan to the physician's assistant who saw him. Plaintiff was not seen by a medical doctor. The physician's assistant increased Plaintiff's medicine, gave him "a 60 day bottom bunk," "bottom floor LAN," and said that Plaintiff needed x-rays. When Plaintiff went to the pill window that evening, Plaintiff received his prior dose, not the increased dose ordered by the physician's assistant. Also on August 1, the grievance clerk brought Plaintiff a "48 hour notice of hearing" regarding the grievance Plaintiff had filed.

On August 2, Plaintiff received his increase dose of medication. Plaintiff remained in "a lot of pain," experienced "anxiety" over "this situation," and began to have his appetite affected. He again signed up for sick call.

On August 3, Plaintiff returned to sick call, reporting that he remained in pain, that he wanted to see a doctor and not a physician's assistant, and that he had yet to receive a telephone call regarding the x-rays that the physician's assistant told him he needed. The nurse informed Plaintiff that she would "check into it and let [him] know." Plaintiff's grievance hearing regarding his first grievance was scheduled for 1:00pm that day, but "got cancelled for some reason." Plaintiff again signed up for sick call.

On August 4, Plaintiff returned to sick call and was informed that the nurse would speak to the doctor regarding the x-rays the physician's assistant told Plaintiff he needed to have. Plaintiff was supposed to have his grievance hearing at 1:00pm, but again it got cancelled. Plaintiff states that there "is only suppose [*sic*] to be one grievance filed on the same level at one time." Plaintiff explained to the Unit Manager's secretary that the postponements of his grievance hearing were "holding up [his] grievance from being processed on [his] second

5

grievance." The Unit Manager's secretary called the grievance office and was informed that Plaintiff would have the hearing some time the following week. As of August 4, Plaintiff had yet to see a doctor.

On August 5, Plaintiff spoke to Defendant Parrish regarding the delay in his grievance hearing and not receiving "adequate medical attention." Defendant Parrish instructed Plaintiff to contact Defendant Jordan, explain the situation, and ask for her help. Plaintiff explained to Defendant Parrish that Defendant Staggs expected him to return to work on August 14 or receive a "Class A write-up for refusing a direct order or failure to participate."

Plaintiff signed up for sick call on August 6 and August 7. At noon on August 7, Plaintiff informed Ms. O'Neal, the Unit Manager's Assistant, that he had a medical appointment at 1:00pm to receive his x-rays. Ms. O'Neal contacted Defendant Hefner to inform her of Plaintiff's medical appointment, which was apparently scheduled for the same time as Plaintiff's grievance hearing. Plaintiff received his x-rays and went directly to his grievance hearing. Defendant Hefner, Defendant Pool, a grievance clerk, another inmate, and Plaintiff were present at his grievance hearing. Defendant Hefner read Plaintiff's grievance and response (written by Sergeant Hickerson, Defendant Staggs' boss), which indicated that Plaintiff should have returned to work after three days, that Defendant Staggs had had problems with Plaintiff in the past, and that Defendant Staggs had not threatened Plaintiff. Plaintiff appealed the grievance to the Warden.

On August 8, Plaintiff asked Defendant Parrish if an accident report had been made, per "policy." Defendant Parrish responded that he did not know, but that "he would check into it." At approximately 1:20 pm, Defendant Pool called Plaintiff to her office and asked him whether

6

he wanted to drop his medical grievance now that he had received treatment. Plaintiff responded "no," and told Defendant Pool that he had yet to see a doctor.

Plaintiff returned to sick call on August 9 requesting to see a doctor and complaining that he remained in pain. Plaintiff explained to the nurse that he was expected to return to work the coming Monday. That evening, Plaintiff received a "LAN for another 10 days."

On August 10, Plaintiff requested to review his medical records and sent an Inmate Job Request to Defendant Gobbell.

Plaintiff visited Defendant Pool on August 13 to check on the status of his Inmate Job Request (that was apparently related to "going to education" to obtain his GED). There was no record of Plaintiff's request. Plaintiff signed up for sick call and requested to see the doctor because he was scheduled to return to work, but knew that he could not handle it.

Plaintiff returned to sick call on August 14. He completed another Inmate Job Request for education so that he could obtain his GED. Plaintiff filled out a form for "Pre-release" and gave it to "Mrs. Caperton" to put in "the box" for him. Plaintiff was attempting to "get into a program" so that he could "get [his] days and [his] pay" because, since he had become injured, he was not being paid or receiving good time credits. Plaintiff signed up for sick call again and sent another letter to review his medical records to see whether Defendant Staggs had completed an incident report.

On August 15, Plaintiff returned to sick call and was informed that Defendant Edwards had instructed the nurse to "put [him] down to see the doctor this week." Plaintiff received Percocet that evening. Plaintiff signed a "48 hour notice on Medical Grievance." The response on the medical grievance was that Plaintiff had received medication, had seen the physician's

7

assistant, had received an x-ray, and was scheduled to see the physician's assistant again the following week.

On August 17, Defendant Hefner "deemed [Plaintiff's] medical grievance inappropriate," and Plaintiff appealed. Plaintiff returned to the clinic and was seen by the physician's assistant who informed him that his x-rays were not back yet. The physician's assistant told Plaintiff that he would call him in two weeks for a follow-up.

On August 19, Plaintiff "signed a second stage appeal where Warden deemed [his] medical grievance inappropriate." Plaintiff appealed. Plaintiff filled out Inmate Job Request to change jobs, but had yet to be placed on the "job register."

On August 20, Plaintiff again requested to review his medical records to see whether Defendant Staggs had completed an incident report. Plaintiff went to Defendant Pool's office to "check on Class B medical" and Defendant Pool informed Plaintiff that "it said no lifting over 20 pounds, no stuping [*sic*], no bending, and no standing over 30 minutes." Plaintiff completed two more "job changes" and gave them to Defendant Pool "for Rockman & Pre-release." Plaintiff spoke to Defendant Parrish regarding his "Class B medical" and told him that he needed a job. Defendant Pool told Plaintiff to check with Sergeant White regarding a job, but Sergeant White told Plaintiff that "it would be awhile [*sic*] before he could put [Plaintiff] to work."

Plaintiff signed up for sick call again on August 21.

On August 22, Plaintiff returned to sick call and spoke to a nurse regarding his remaining on Defendant Staggs' work crew even though he had a "Class B medical" and should therefore have received a "job drop." Plaintiff informed Defendant Staggs about his status as a "Class B medical," and Defendant Staggs instructed Plaintiff to produce the appropriate paperwork

8

demonstrating that he was a "Class B medical" by August 23, the next day. Plaintiff went to Defendant Parrish's office to obtain the paperwork demonstrating that he was a "Class B medical" and Defendant Parrish informed Plaintiff that he could continue to work on Defendant Staggs' work crew with a "Class B medical."

On August 25, Plaintiff received a letter from Defendant Edwards informing him that she had "instructed the medical department to set up an appointment in the next week or two" to review his medical records.

On August 27, Plaintiff discovered that he remained assigned to Defendant Stagg's work crew. Plaintiff signed up for sick call regarding his back pain and a broken tooth.

Plaintiff returned to sick call on August 28 to see the doctor and a dentist.

Plaintiff again returned to sick call on August 29 to see a dentist regarding his broken tooth. Plaintiff filed a grievance regarding "the lack of medical attention [he] was receiving for [his] tooth."

On August 31, Plaintiff saw Defendant Pool to inquire as to whether he remained on Defendant Staggs' work crew. Defendant Pool informed Plaintiff that he, indeed, remained on Defendant Staggs' work crew. Plaintiff asked Defendant Pool what he "could do about this because [he] need[ed] to get [his] days and pay." Defendant Pool advised Plaintiff to speak with Defendant Parrish. Plaintiff spoke to Defendant Parrish, who informed him that "the PA classified [Plaintiff] as a Class B medical on 8/17 06 and it showed up in the computer the 20th and [Plaintiff's] LAN was over on the 23rd," so he "should get paid and get [his] days from 8/23/06 as long as [he] report[s] to work whether or not Staggs takes [him] out or not." Defendant Parrish informed Plaintiff that they would be able to discuss getting Plaintiff a

different job the following week.

Plaintiff returned to sick call on September 1 for back and tooth pain, but was informed that it "would probably be next week before [he] could see anybody." Plaintiff was out of medication and "would have to reorder." Plaintiff did not receive any medication when he went to the pill window that evening.

Plaintiff signed up for sick call on September 3.

Plaintiff was not given any medication when he went to the pill window on September 4.

On September 5, Plaintiff returned to sick call and was given Percocet. Plaintiff wrote another letter to Defendant Edwards asking to review his medical file. Plaintiff spoke to Defendant Pool and inquired as to whether he remained on Defendant Staggs' work crew. Defendant Pool responded in the affirmative and stated that she would email the job coordinator and remind her that Plaintiff was classified as "Class B medical." Plaintiff visited Defendant Casteel to discuss the grievance he had filed regarding the lack of dental care he was receiving. Defendant Casteel assured Plaintiff that she "would check on it."

On September 6, Plaintiff spoke to Defendant Pool, who informed him that he had been taken off Defendant Staggs' work crew. Defendant Pool also informed Plaintiff that he had lost six program credits for the month of August since he "had a LAN and didn't work."

On September 8, Plaintiff returned to sick call. Later that afternoon, Plaintiff went to the clinic and saw the physician's assistant, who ordered more medication for Plaintiff.

On September 11, Plaintiff went to sick call because his tooth was hurting. Plaintiff was assured that he "was on the list to see the dentist." Plaintiff sent letters to Defendants Lindamood and Jordan, and "Alisha Thompson" regarding his pay and program credits being

10

taken away from him, despite his being injured on the job.

On September 12, Plaintiff went to the dentist and had his tooth pulled. Plaintiff reported to the dentist that he had a second tooth that was bothering him. The dentist informed Plaintiff that he would need to complete a new sick call request pertaining to the second tooth.

Plaintiff went to the clinic and saw the doctor on September 15. The doctor prescribed Robaxin.

Defendant Hefner informed Plaintiff on September 20 that he could not grieve program credits or pay because he had a LAN. Defendant Hefner informed Plaintiff that he could, however, grieve the instances after his LAN had run out when he reported to work but did not get paid, but that "it would be deemed inappropriate but [he] could appeal it to the commissioner."

On September 25, Plaintiff's grievance regarding his pay and program credits was returned to him "deemed inappropriate." Plaintiff appealed. Plaintiff completed another job request and signed up for sick call.

Plaintiff spoke to Defendant Pool on September 26 regarding the denial of his sentence credits. Defendant Pool explained the policy to Plaintiff.

On October 1, Plaintiff signed a "48 hour notice for reclass."

Plaintiff completed three more job requests on October 3. Plaintiff avers that Defendants Parrish, Pool, and Gobbell would not give him a job in reprisal for filing a grievance against Defendant Staggs.

Plaintiff was "reclassed" on October 5. Also on October 5, Plaintiff asked Defendant Pool why he had not received a hearing regarding the grievance he filed. Defendant Pool

11

responded that Plaintiff's grievance "still [was] at level one."

On October 9, Plaintiff asked Defendant Hefner about his grievance. Defendant Hefner informed Plaintiff that they had until October 14 to respond. Plaintiff asked Defendant Parrish for assistance in obtaining a job, but Defendant Parrish informed Plaintiff that there was nothing he could do to help.

On October 10, Plaintiff spoke to Defendants Pool and Parrish regarding obtaining assistance in getting a job, but was informed that "there was nothing they could do" if he continued to file grievances.

On October 11, Plaintiff completed another job request and again asked Defendants Pool and Parrish for assistance in obtaining a job. Plaintiff was informed that he "was going home soon and didn't need one." Plaintiff had not yet received a hearing on the grievance he filed nearly four weeks prior. Plaintiff wrote a new grievance regarding "them using reprisal tactics against [him] by not giving [him] a job because of the situation with Staggs," but the grievance clerk told him that he could not file the grievance yet because his previous grievance was "still at level 1 and [he] can't have two grievances at the same level." The grievance clerk had Plaintiff "sign a 48 hour notice on a hearing for the program credit grievance."

Plaintiff saw the physician's assistant on October 12 for a refill of his back pain medication. Also on October 12, Plaintiff completed another job request.

Plaintiff had not received a new grievance hearing as of October 17.

On October 18, the grievance clerk returned Plaintiff's grievance to him. The Warden deemed Plaintiff's grievance inappropriate because it was untimely. Plaintiff "signed off" on the grievance because they "said they would give [him] a job if [he] signed off on it."

12

Plaintiff still did not have a job as of October 24.

On October 26, Plaintiff spoke to Defendants Pool and Parrish, who informed him that they had informed Defendant Gobbell that Plaintiff had "signed off" on the grievance and had said that he would not write any more. Defendant Parrish would not permit Plaintiff to copy his grievances.

On October 30, "JoAnn" spoke to Defendant Jordan about Plaintiff's getting a job. Defendant Parrish continued to deny Plaintiff copies of his grievances and did not give Plaintiff "indigent supplies such as shampoo, soap, etc." Plaintiff filed a grievance against Defendant Gobbell for "reprisal." Plaintiff requested another grievance, but did not receive it.

On October 31, Plaintiff spoke to his family regarding two letters that he mailed to them on October 23, but that they did not receive until October 28.

On November 2, Plaintiff wrote a letter to Defendant Jordan "because I wrote a grievance on C/O Staggs and they are refusing to give me a job and it is my right to file a grievance," because they "are placing an extreme hardship on me because I can't buy essentials needed for day to day living and I am losing program credits by not working," and because Defendant Parrish would not allow him to copy his grievances.

Plaintiff "signed job papers for Adult Education" and wrote a letter to Defendant Jordan requesting her assistance in obtaining his program credits for July and August.

On November 17, Plaintiff requested, but did not receive, an "indigent pack" from Defendant Parrish. Plaintiff also requested, but did not receive, another grievance form. Defendant Parrish did not permit Plaintiff to copy his grievances.

Plaintiff signed up for sick call on December 7 because of his back pain. Plaintiff refused

13

to sign a "$3.00 withdrawal form," but did sign a "refusal form" and was given his medication.

On December 12, Plaintiff wrote a letter to Defendant Jordan regarding the "6 days they owe" him.

On December 14, Plaintiff sent an "Inmate Inquiry about the credits owed for July and August."

On December 19, Plaintiff received a response to his "Inmate Inquiry" iterating that there "was no evidence that [he] had been injured."

Plaintiff filed a grievance on December 21 "because there was no accident report filled out" the day he became injured. He requested that an accident report be completed. Plaintiff received a response to his grievance on January 3. The response noted that Plaintiff "could not file the grievance" because he was "abusing the grievance procedure." Plaintiff appealed and resubmitted the grievance. Plaintiff's grievance was returned to him as untimely because it had been "over seven days since the incident happened."

### III. Analysis

#### A. Standard of Review: Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. The purpose of this rule is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In order to preclude dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain either direct or inferential allegations which comprise all of the essential, material elements necessary to sustain a claim for relief under some viable legal theory. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 406

14

(6th Cir. 1998).

The Court is required to construe the complaint in the light most favorable to the plaintiff and to accept all well-pleaded allegations of fact as being true. *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). Despite the Court's responsibility to liberally construe the complaint in the plaintiff's favor, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Accordingly, the Court does not have to accept as true mere legal conclusions and unwarranted inferences of fact. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Finally, while pro se complaints are to be construed liberally (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), that liberality does not allow a court to conjure up unpled facts. *McFadden v. Lucas*, 713 F.2d 143, 147 n.4 (5th Cir. 1983); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077 (1978).

### B. 42 U.S.C. § 1983

#### 1. Generally

Plaintiff essentially alleges violations of his First, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket Entry No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

15

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Defendant in his Individual Capacity

Plaintiff sues Defendant Brewster in his individual capacity. Docket Entry No. 1. Defendant Brewster was a dentist temporarily providing services to inmates at the South Central Correctional Facility, and who provided dental services to Plaintiff in March, 2007. Docket Entry No. 61-2.

In order to hold Defendant Brewster liable in his individual capacity, Plaintiff must demonstrate that Defendant Brewster personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)(citations omitted). Plaintiff's Complaint fails to allege any action or inaction by Defendant Brewster. Significantly, Plaintiff's Complaint pertains to a series of events that occurred between July 25, 2006 and January 3, 2007. Defendant Brewster did not treat Plaintiff

16

until March, 2007. Docket Entry No. 61-2. Although Plaintiff's Complaint avers that he requested to see the dentist on or about September 1, 2006, and that he was treated by an unnamed dentist on or about September 12, 2006, that dentist was not Defendant Brewster.

Because Plaintiff has failed to proffer any allegations whatsoever against Defendant Brewster, Plaintiff cannot sustain his claims against Defendant Brewster.

## IV. Conclusion

For the foregoing reasons, Defendant Brewster's Motion to Dismiss is GRANTED.

An appropriate Order will enter.

*Todd Campbell*
TODD J. CAMPBELL
United States District Judge

17