IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **DENNIS McGOUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| vs. | ) | **CASE NO. 1:07-0039** |
| | ) | **JUDGE CAMPBELL/KNOWLES** |
| | ) | |
| | ) | |
| **CORRECTIONS CORPORATION OF** | ) | |
| **AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a "Petition for Expungement of Record as to Charles T. Marable, M.D." Docket No. 77. Judge Campbell has previously referred this case to the undersigned for decision on any pretrial matters and for recommendations on any dispositive motions. Docket No. 74.

The Petition seeks an Order of expungement *nunc pro tunc* that would require the Clerk to remove Dr. Marable's name from the Court's record in this action. Docket No. 77. The Petition avers that Dr. Marable was mistakenly named as a Defendant by a pro se Plaintiff, and that no factual or legal basis existed for a claim against him. *Id*., p. 1. Despite the fact that Dr. Marable has obtained summary judgment in this action (Docket Nos. 67, 68), he still must disclose the existence of this "baseless action . . . on many documents including applications and renewal applications for hospital privileges, insurance applications, medical license renewal

1

applications, and numerous third-party payor forms." Docket No. 77, p. 1-2. The Petition states, "Repeatedly disclosing this case creates a significant upon [*sic*] Dr. Marable."[1] *Id*., p.2. Dr. Marable asks that "an Order be entered effective *nunc pro tunc* to the filing date of the original Complaint expunging his name from this lawsuit so that this lawsuit is held for naught as if it never happened and that he, the Court, and any other individual may properly reply and report that there was no such lawsuit and that there is no record of this lawsuit." *Id*., p. 2-3.

Plaintiff has not filed a Response to the Petition.

Dr. Marable relies upon the Court's "inherent power to grant the relief requested . . . ." *Id*., p. 2. He cites federal cases from other circuits, all of which involve expungement of criminal records, and two cases from the Circuit Court for Davidson County, Tennessee.[2] *Id*.

As an initial matter, the Court must determine whether it has jurisdiction to consider the Petition. "[E]very federal court, whether trial or appellate, is obliged to notice want of subject-matter jurisdiction on its own motion." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131 n.1. (Ginsburg, J., concurring).

Dr. Marable does not specify any jurisdictional basis for the petition, except to the extent that "inherent power" could be construed as a jurisdictional basis. In *Kokkonen v. Guardian Life*

---

[1] This is obviously a typographical error, and the Court assumes that the term "hardship" or "burden" should have followed the word "significant."

[2] Dr. Marable cites two cases from the Davidson County Circuit Court which involved expungement in medical malpractice actions. Docket No. 77, p. 2. Dr. Marable has submitted a copy of the expungement Order in a medical malpractice case filed by John Fox and Shirley Fox. This Order contains no analysis – it is simply an Order expunging Defendant's name from the record. With regard to the other malpractice action, filed by Stacy Tavalin, Dr. Marable states that the record in that case has been sealed, and counsel is unable to attach a copy of the Order. *Id.*

2

*Ins. Co. of Am.*, 511 U.S. 375, the Court stated:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

511 U.S. at 377 (citations omitted).

In *Kokkonen*, the parties entered a court approved settlement agreement, and the district court dismissed the case. The Order of Dismissal, however, did not reserve jurisdiction in the district court to enforce the settlement agreement, and the Supreme Court held that the lower court did not have subject matter jurisdiction to grant a motion to enforce the settlement agreement. The *Kokkonen* Court stated in part as follows:

> Respondent relies upon the doctrine of ancillary jurisdiction, which recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.
>
> . . .
>
> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

511 U.S. at 378-80 (citations omitted).

The *Kokkonen* Court related the concept of "inherent power" to the second type of ancillary jurisdiction. 511 U.S. at 380.

The Sixth Circuit has discussed the Court's "inherent power" as it pertains to the issue of

3

expungement in three cases, two of which predate *Kokkonen*, and one of which post-dates *Kokkonen*, but does not discuss it. In *U.S. v. Doe*, 556 F.2d 391 (6th Cir. 1977), the Sixth Circuit held, "It is within the inherent equitable powers of a federal court to order the expungement of a record in an appropriate case." 556 F.2d at 393. In *Doe*, Defendant, who had been sentenced pursuant to the Federal Youth Corrections Act (18 U.S.C. §5005 *et seq.*), and whose conviction had been set side pursuant to a provision of that Act, sought the expungement of his record. The district court denied the expungement, and the Sixth Circuit agreed that the Act did not authorize the expunction of Defendant's record. Defendant also argued that the court had "equity jurisdiction" to expunge the record, and the Sixth Circuit made the statement quoted above. The Court, however, denied the request for expungement, stating that the lower court had not abused its discretion.

In *U.S. v. Smith*, 1988 U.S. App. LEXIS 2917 (6th Cir.), the Court stated that "a federal court may order the expungement of criminal records in an appropriate case on the basis of . . . the court's inherent equitable powers." *Id*. at *4. The *Smith* Court also noted the "established national policy that criminal records be maintained as an aid to effective law enforcement." *Id*. at *3-4, *citing* 28 U.S.C. § 534. In *Smith*, Defendant argued that his record should be expunged because he had been granted a presidential pardon. The lower court denied the motion, and the Sixth Circuit affirmed, finding that the district court had not abused its discretion.

In *U.S. v. Robinson*, 1996 U.S. App. LEXIS 8245 (6th Cir.), Petitioner filed a petition seeking to expunge the record of her mail fraud conviction approximately eight years after her guilty plea. In affirming the district court's denial of the petition, the Sixth Circuit stated in part as follows:

4

> We have held that "it is within the inherent equitable powers of a
> federal court to order the expungement of criminal records in an
> appropriate case." [3] *Doe*, 556 F.2d at 393. Nevertheless, this court
> has not yet posited a standard for determining which cases are
> "appropriate." Other circuits recognizing an equitable power to
> expunge have generally held that the decision to exercise such
> power hinges on a balancing of "the government's need to
> maintain extensive records to aid in effective law enforcement
> against the harm to the individual of maintaining these
> records . . . ."
>
> . . .
>
> Acknowledging the strength of the government's interest in this
> context, however, these circuits have held that the expungement
> power is narrow and appropriately used only in extreme
> circumstances.

1996 U.S. App. LEXIS at *3-4 (citations omitted, footnote added).

*Doe, Smith* and *Robinson* all involved expungement in the context of criminal cases. All the federal cases cited by Dr. Marable in support of his arguments also involved expungement in the context of criminal cases. Insofar as the Court can determine, the Sixth Circuit has never specifically recognized the proposition that expungement is appropriate in a civil case. But it seems logical that, if the Court has the power to expunge criminal records, it also has the power to expunge civil records. In the absence of any controlling authority from the Sixth Circuit, the Court believes that Dr. Marable has arguably raised an equitable claim sufficient to invoke the Court's ancillary jurisdiction.

---

[3] As quoted above, the Sixth Circuit actually stated in *Doe*, "It is within the inherent equitable powers of a federal court to order the expungement of a *record* in an appropriate case." 556 F.2d at 393 (emphasis added). *Robinson* is an unpublished decision, and the Westlaw and Lexis versions of *Robinson* quote *Doe* as stating, "It is within the inherent equitable powers of a federal court to order the expungement of *criminal records* in an appropriate case." 1996 U.S. App. LEXIS 8245 (6th Cir.) at *3 (emphasis added); 1996 W.L. 107129 (6th Cir.) At *1 (emphasis added).

5

Turning to the merits, as many of the cases cited by Dr. Marable recognize, there is a strong public interest in maintaining accurate Court records. Many courts cite 28 U.S.C. § 534, which generally requires the Department of Justice to collect criminal records and make them available to state and local law enforcement agencies, as evidence of this public interest.

While this is not a criminal case, the Court concludes that there is also a strong public interest in maintaining accurate records in civil cases. Fed. R. Civ. P. 79(a)(1) requires the clerk of a federal district court to "keep a record known as the civil docket . . . ." Fed. R. Civ. P. 79(a)(2)(A) and (C) provide that "papers filed with the clerk," and "orders" must be "entered chronologically in the docket."

There is also a strong public interest in free and open access to court documents. Albeit in a different context, the Sixth Circuit has stated:

> The English common law, the American constitutional system, and the concept of the "consent of the governed" stress the "public" nature of legal principles and decisions. Throughout our history, the open courtroom has been a fundamental feature of the American judicial system. Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings. These principles apply as well to the determination of whether to permit access to information contained in court documents . . . .

*Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1177 (6th Cir. 1983).

The adverse consequences to Dr. Marable, as set forth in his Petition, are that: (1) he must disclose the existence of this action; (2) he must disclose information about this action on many documents, which creates a significant hardship upon him; and (3) it is unfair for his reputation, insurability, and professional credibility to be diminished merely because a pro se litigant filed a baseless lawsuit against him.

6

In balancing these competing interests, the Court must keep in mind that the expungement power is narrow and appropriately used only in extreme circumstances. *Robinson, supra*. As one Court has stated, expunction is an extraordinary remedy and any unwarranted adverse consequences "must be uniquely significant in order to outweigh the strong public interest in maintaining accurate and undoctored records." *U.S. v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004).

In the case at bar, Dr. Marable has not shown any uniquely significant unwarranted adverse consequences. The major adverse consequence to Dr. Marable appears to be that he must disclose information about the lawsuit. Presumably, in disclosing such information, he may also disclose the facts that a pro se prisoner filed a baseless lawsuit against him and that that lawsuit was dismissed upon a motion for summary judgment. He may also disclose that the Court's Memorandum Opinion found it was undisputed that he did not provide medical care and treatment to Plaintiff.

With regard to Dr. Marable's "unfairness" argument, he makes a conclusory statement regarding the diminution of his reputation, his professional credibility, and his "insurability." There is no evidence in the record to support Dr. Marable's claims, and it is difficult to see how a baseless lawsuit filed by a pro se prisoner would diminish Dr. Marable's reputation or professional credibility.

This case does not present the kind of extreme circumstances necessary to justify expungement of the Court's records.

For the reasons discussed above, the "Petition for Expungement of Record as to Charles T. Marable, M.D." (Docket No. 77) should be DENIED.

7

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. Clifton Knowles
United States Magistrate Judge

9